**TROUTMAN PEPPER LOCKE LLP**
Angelo A. Stio III (*pro hac vice* forthcoming)
104 Carnegie Center Drive
Suite 203
Princeton, NJ 08540
Tel: (609) 452-0808
angelo.stio@Troutman.com

Austin Padgett (SBN 296309)
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3000
austin.padgett@troutman.com

*Attorneys for Plaintiff Khoros, LLC*

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KHOROS, LLC,

Plaintiff,

vs.

BEVY LABS, INC., and DEREK ANDERSEN,

Defendants.

Case No.

**COMPLAINT FOR (1) FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B); (2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE; (3) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200**

JURY TRIAL DEMANDED

Plaintiff Khoros, LLC ("Khoros") files this Complaint against Defendants Bevy Labs, Inc. ("Bevy") and Derek Andersen ("Andersen," and together with Bevy, "Defendants") and respectfully alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), intentional interference with contractual relations and prospective economic advantage under California law, and unfair competition under California Business and Professions Code § 17200. Bevy, a direct competitor of Khoros in the market for online community software, has published commercial statements of present fact that are false. Bevy has stated that Khoros is "Not accepting new customers," that Khoros's "R&D funding has paused," and that the Khoros product roadmap is "paused," none of which are true. Bevy has also misrepresented the nature, characteristics, and qualities of its own software by stating that it has "4.8 of 5 stars in G2Crowd with 2546 reviews" when its listed G2 profile showed 111 reviews. Bevy and its Chief Executive Officer, Derek Andersen, have used those statements in a campaign, announced by Andersen in writing, to "reach out to all Khoros customers" and move them off their Khoros contracts.

2. The statements about Khoros are false. Since IgniteTech acquired Khoros, Khoros has continued to accept and onboard new customers, has continued to invest in research and development, and has continued to ship new products and releases, including twenty-three product releases since the acquisition, among them the Aurora AI launch on April 10, 2026 and the first production release of a new product, Iris AI, in October 2026.

3. On April 10, 2026, Khoros demanded in writing that Bevy stop its outreach to Khoros customers and its use of the Khoros name.

4. Bevy did not respond and instead four days later, Andersen publicly offered free conference tickets and paid travel to "current Khoros customers" under contract.

5. On October 21, 2026, Khoros notified Bevy in writing that the migration- and comparison-page statements were false and demanded their removal and correction. Bevy again did not respond and failed to remove the statements.

6. Khoros seeks preliminary and permanent injunctive relief requiring removal of the statements and a court-approved correction, together with the other relief available under federal and California law.

**PARTIES**

7. Plaintiff Khoros, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Austin, Texas. Khoros is the contracting and operating entity for the Khoros online community platform.

8. Defendant Bevy Labs, Inc. is a Delaware corporation with its address of record with the California Secretary of State at 3790 El Camino Real, Unit #532, Palo Alto, California 94306-3314. Bevy is registered with the California Secretary of State as an out-of-state stock corporation; its initial filing was on September 26, 2017. Bevy's registered agent is Sandra Koch, 3643 South Mooney Boulevard, Unit 1005, Visalia, California 93277. Bevy develops and sells online community software in competition with Khoros and owns and operates the CMX Summit. Bevy's Chief Executive Officer is Derek Andersen.

9. Defendant Derek Andersen is an individual who, on information and belief, resides in California. Andersen is Bevy's Chief Executive Officer and co-founder. He personally directs Bevy's marketing to Khoros customers, including the plan he announced in writing on April 9, 2026 and the offer he published on April 14, 2026, alleged below -- he personally authorized and participated in the publication and use of the statements at issue and is individually liable for the conduct alleged in this Complaint because he personally participated in it.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over Khoros's Lanham Act claims under 28 U.S.C. §§ 1331 and 1338(a)-(b), 15 U.S.C. § 1121, and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a).

11. The state-law claims arise from the same nucleus of operative facts as the Lanham Act claims and form part of the same case or controversy under Article III of the United States Constitution.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

12. This Court has personal jurisdiction over Bevy because Bevy is at home in California and maintains its principal place of business in Palo Alto, California. Khoros's claims arise from and relate to Bevy's commercial website, California-based operations, and the creation and publication of the statements at issue. This Court has personal jurisdiction over Andersen because, on information and belief, he resides in California, and because he directed and participated in the conduct at issue from Bevy's California operations.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because Bevy resides in this District and a substantial part of the events giving rise to Khoros's claims occurred here, including the creation, publication, and dissemination of the challenged statements from Bevy's Palo Alto operations.

14. Assignment to the San Jose Division is proper under Civil Local Rule 3-2(c) and (e) because Bevy resides in Santa Clara County and substantial events giving rise to the claims, including the creation and publication of the challenged statements, occurred there.

## FACTUAL ALLEGATIONS

### A. Khoros and Its Online Community Platform

15. Khoros provides online community software that enterprises use to host and manage branded online communities for their customers. Khoros markets and sells its platform to businesses throughout the United States and internationally.

16. IgniteTech acquired Khoros in May 2025. Since the acquisition, Khoros has continued to operate, sell, support, and develop its community platform.

17. In July 2025, IgniteTech issued a press release announcing, "a series of strategic investments and customer-focused initiatives to advance the Khoros platform," stating that Khoros "serves 2,000 of the world's most reputable companies, including a third of the Fortune 100," that IgniteTech "is accelerating the rollout of new AI features across the Khoros platform," and that "[a]ll future innovation will be built on Aurora, Khoros's modern platform architecture."

18. Since the acquisition, Khoros has launched Aurora and has shipped twenty-three product releases: fourteen releases of the Aurora and Communities platform, consisting of six major releases, including Aurora AI, launched April 10, 2026 and announced by press release ("Khoros

Launches Aurora AI: A New Dawn for Enterprise Community") with free migrations from Community Classic to Aurora AI through December 31, 2026, and eight maintenance releases; six releases of its Care and social media management products; two Community Guard security releases, in September and October 2026; and the first production release of Iris AI, a new product written from the ground up to replace its Care and social media management products, in October 2026.

19. Since the acquisition, Khoros has continued to accept new customers, including a semiconductor company that signed in October 2025, a financial services firm that signed in December 2025, and an enterprise software company that began a pilot in June 2026. In October 2026, Khoros publicly launched its Bring Your Own Bill program (khoros.ai/bring-your-own-bill-program), a published-pricing offer directed at new customers, including customers of competing platforms, with 50% off the community-platform line in the first year and 25% in the second and third years, free migration to Aurora AI on orders signed by December 31, 2026, and a written price within five business days.

20. Since the acquisition, Khoros has continued to fund research and development of its platform. It has shipped the releases alleged in paragraph 18 and has developed and released Iris AI, a new product.

**B. Bevy Competes Directly with Khoros**

21. Bevy sells online community software and competes directly with Khoros for the same customers. Bevy markets its platform as an alternative to Khoros, including by publishing web pages specifically directed at persuading Khoros customers to migrate to Bevy.

**C. Bevy's False Statements on Its Migration and Comparison Pages**

22. Bevy publishes on its commercial website one or more "migration" and "comparison" pages directed at current and prospective Khoros customers, including https://bevy.com/b/migration and https://bevy.com/b/bevy-vs-khoros. The pages display no publication date. Khoros has observed and preserved dated captures of the statements described below, including on October 12, 2026, and, most recently, on November 5, 2026, after the fourteen-day period in Khoros's written demand had expired, and they remained published as of the filing of this Complaint.



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

23. Those pages are commercial advertising and promotion. They are published by Bevy, a competitor, for the purpose of influencing consumers to purchase Bevy's software instead of Khoros's, and they are disseminated to the relevant purchasing public, including Khoros customers and prospective customers.

24. Among other things, Bevy's pages state:

a. that Khoros is "Not accepting new customers";

b. that Khoros's "R&D funding has paused"; and

c. that the Khoros roadmap is "paused."

25. The migration page presents the statement "Not accepting new customers" in a comparison table under the heading "Migration," opposite Bevy's own entry, "Simple, easy, managed by experts." The comparison page states that "[s]ince ESW Capital acquired Khoros, R&D funding has paused and most veteran customer-success leads have departed," and lists Khoros's roadmap as "paused with uncertain future timeline." The pages pair those statements with offers directed at Khoros customers, including "Migrate now with 50% off and earn $5,000 per referral," and attribute to unnamed "Khoros Clients" the statement that "[w]hen the acquisition happened our roadmap froze."

26. Each of these statements is a specific, verifiable statement of present fact about Khoros's business and commercial activities. Each is literally false.

27. Khoros is accepting new customers, and has signed new customers since the acquisition, as alleged above.

28. Khoros's research and development funding has not paused. Khoros has continued to invest in the development of its platform, as alleged above.

29. Khoros's product roadmap has not paused. Khoros has continued to release new products and features, including Aurora AI and the twenty-three releases alleged in paragraph 18.

30. The falsity of these statements was readily ascertainable from public information, including IgniteTech's July 2025 press release and Khoros's public product announcements. Bevy also had actual knowledge of those facts: from September 2025 through August 2026, Bevy employed Khoros's former Chief Community Evangelist, who had been identified in IgniteTech's




TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

July 10, 2025 release as continuing with Khoros to "lead customer conversations," and Bevy's own comparison page describes the acquisition.

31. Statements that a software vendor is not accepting new customers, has stopped funding development, and has paused its roadmap go to the core of a purchasing decision for enterprise software. Customers who rely on a platform over a multi-year term need assurance that the vendor will continue to develop and support it. Bevy's statements are therefore material and likely to influence the purchasing decisions of current and prospective Khoros customers.

**D. Bevy's False Statement About Its Own G2 Rating**

32. Bevy's migration page states that Bevy has "4.8 of 5 stars in G2Crowd with 2546 reviews." G2 (formerly G2 Crowd) is a third-party software review platform widely consulted by enterprise software purchasers.

33. That statement is literally false. As of October 12, 2026, Bevy's actual G2 listing reflected 111 reviews, not 2,546.

34. The number and rating of independent user reviews is material to software purchasers. By overstating its G2 review count by more than twenty-fold, Bevy misrepresented the nature, characteristics, and qualities of its own goods and services in a manner likely to divert customers from Khoros.

**E. Bevy's Campaign Directed at Khoros Customers**

35. Khoros had entered into a sponsorship agreement with Bevy for the CMX Summit.

36. On March 18, 2026, Khoros withdrew from its sponsorship of the CMX Summit.

37. On April 9, 2026, Andersen wrote to Khoros, "We plan to reach out to all Khoros customers and invite them with a ticket promotion. We will reach out to some others in the company and on social media hoping for a response to our messages." Andersen further stated that Bevy would "continue to include you in all marketing and promotion" and would "talk about Khoros at the event."

38. Bevy has pursued that plan with the help of Khoros's former Vice President of Marketing and Chief Community Evangelist, who joined Bevy in September 2025 as its Vice President of GTM and Product Strategy, a hire Bevy announced on October 7, 2025, and who

remained employed by Bevy through August 2026. On November 24, 2025, Khoros wrote to Bevy, with a copy to Andersen personally, enclosing that executive's agreement with Khoros and giving Bevy notice of his confidentiality obligations, which cover Khoros's customer lists, customer pricing, prospect lists, product plans, and marketing strategy. Bevy did not respond. On information and belief, Bevy drew on his knowledge of Khoros's customers, pricing, and renewal timing in directing its campaign at Khoros customers.

39. Bevy's campaign has been directed at customers it knew to be under contract with Khoros. Its pages offer Khoros customers "50% off" to "Migrate now" and "$5,000 per referral"; Andersen's April 14, 2026 offer was expressly limited to "current Khoros customer[s]" under contract; and Bevy's migration page features consultant Richard Millington, a defendant in a separate action brought by Khoros, "explain[ing] why switching now matters." Khoros customers under contract have moved to Bevy during their contract terms, including one customer that migrated fourteen of its communities onto Bevy's platform during the term of its Khoros agreement.

**F. Khoros's Demands and Bevy's Failure to Respond**

40. On April 10, 2026, Khoros, through counsel, sent Bevy a letter demanding that Bevy stop its outreach to Khoros customers and its use of the Khoros name and brand, and objecting to Andersen's public statements about Khoros.

41. Bevy never substantively responded to that letter. Four days later, on April 14, 2026, Andersen publicly offered a free CMX Summit ticket to any "current Khoros customer" under contract and paid travel for five of them, conditioned on a visit to a "Community Survival Booth."

42. On October 21, 2026, Khoros, through its counsel, sent Bevy a written demand, addressed to Andersen, identifying the false statements on Bevy's migration and comparison pages alleged in paragraphs 24, 25, and 32 and the facts showing their falsity. The demand required Bevy, within fourteen (14) days, to remove the statements, refrain from repeating them, publish a correction and deliver it to each person to whom Bevy had directed the statements, identify those persons, and certify its compliance through an officer. The demand also requested preservation of relevant evidence. The fourteen-day period expired on November 4, 2026. Bevy did not respond, and as of November 5, 2026, the statements remained published.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

**G. Harm to Khoros**

43. Bevy's false statements have caused and are likely to cause injury to Khoros, including by diverting customers and prospective customers to Bevy and by injuring Khoros's goodwill and reputation. Bevy published the statements to, and directed them at, Khoros's installed base of enterprise customers, a substantial number of which were evaluating renewal or migration decisions while the statements were published, and Khoros has incurred costs to correct the record with its customers, including the costs of investigating and responding to Bevy's campaign.

44. Because the statements remain publicly available and Bevy has announced its intention to contact Khoros customers, Khoros faces continuing injury to its goodwill and customer relationships that may not be fully remedied by money damages. Khoros is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a).

**COUNT I**

**False Advertising Under Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B)**

45. Khoros incorporates the preceding paragraphs by reference.

46. Section 43(a)(1)(B) of the Lanham Act imposes liability on any person who, in connection with goods or services, uses in commerce a false or misleading description or representation of fact which, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of that person's or another person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B).

47. Bevy's statements that Khoros is "Not accepting new customers," that Khoros's "R&D funding has paused," and that the Khoros roadmap is "paused" are false representations of fact about Khoros's goods, services, and commercial activities.

48. Bevy's statement that its software has "4.8 of 5 stars in G2Crowd with 2546 reviews" is a false representation of fact that misrepresents the nature, characteristics, and qualities of Bevy's own goods and services.

49. Bevy made these statements in commercial advertising or promotion, in connection with the sale of its competing community software, and disseminated them in interstate commerce via the internet to the relevant purchasing public.

50. The statements are literally false. They actually deceive or have a tendency to deceive a substantial segment of their audience, and they are material in that they are likely to influence purchasing decisions.

51. Khoros has been or is likely to be injured as a result of the statements, including through diversion of sales to Bevy and loss of goodwill.

52. Bevy's conduct was willful. Bevy knew when it published the statements that Khoros was continuing to sell, develop, and release its platform, as alleged above, and Bevy continued to publish the statements after receiving Khoros's written demand of October 21, 2026, which identified each statement and the facts showing its falsity. Bevy did not remove or correct the statements within the fourteen days the demand provided, or at any time before the filing of this Complaint. As of November 9, 2026, nineteen days after the demand, the statements remained published. Bevy has kept "Not accepting new customers" on its pages while Khoros publicly markets a published-pricing program to win new customers, including customers of competing platforms.

53. Andersen is individually liable on this Count. He personally directed the campaign in which the statements were used, announced it in writing on April 9, 2026, published the April 14, 2026 offer in his own name, and authorized and participated in the continued publication of the statements after Khoros's demand.

54. Khoros is entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116(a) and Federal Rule of Civil Procedure 65, including removal of the statements and a court-approved correction, an order under 15 U.S.C. § 1116(a) requiring Defendants to file with the Court and serve on Khoros, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied, and to recover Bevy's profits, Khoros's damages, corrective-advertising costs, and the costs of this action under 15 U.S.C. § 1117(a). This is an exceptional case warranting reasonable attorneys' fees under 15 U.S.C. § 1117(a).

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

**COUNT II**

**Intentional Interference with Contractual Relations and Prospective Economic Advantage**

**(California Law)**

55. Khoros incorporates the preceding paragraphs by reference.

56. Khoros has written agreements with its enterprise customers for fixed terms (the "Customer Agreements"), and it has an economic relationship with each of those customers, and with the prospective customers to which Defendants directed their statements, that carries the probability of future economic benefit through renewals, expansions, and new sales.

57. Defendants knew of those agreements and relationships. Bevy's pages are addressed to Khoros customers; Andersen announced in writing on April 9, 2026 that Bevy would "reach out to all Khoros customers"; his April 14, 2026 offer was limited to "current Khoros customer[s]" under contract; and Bevy employed Khoros's former Chief Community Evangelist, on written notice of his obligations to Khoros, while it did so.

58. Defendants intentionally acted to induce Khoros customers to abandon or breach their Customer Agreements and to disrupt Khoros's customer and prospective-customer relationships: they published the false statements alleged above, paired them with migration discounts, referral bounties, and free conference tickets and travel directed at customers under contract, and used Khoros's own former executive to target that outreach. Defendants' conduct was independently wrongful because it violated Section 43(a)(1)(B) of the Lanham Act and California Business and Professions Code § 17200.

59. Defendants' conduct has caused actual breach or disruption of Khoros's Customer Agreements and relationships, including the migration of customers to Bevy during their contract terms, as alleged in paragraph 39, and, on information and belief, customers that invoked Defendants' statements in renewal negotiations, and it has disrupted Khoros's prospective relationships with the customers and prospects to which the statements were directed.

60. Khoros has been damaged by Defendants' interference in an amount to be proven at trial, including lost contract revenue, renewal concessions, and the costs of responding to Defendants' campaign.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

61. Defendants acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294: they published statements they knew to be false, directed them at customers they knew to be under contract, and continued after written notice. Khoros is entitled to punitive damages on this Count.

**COUNT III**

**Unfair Competition Under California Business and Professions Code § 17200**

62. Khoros incorporates the preceding paragraphs by reference.

63. Defendants' conduct constitutes unlawful and fraudulent or unfair business acts or practices under California Business and Professions Code § 17200, including because Defendants violated Section 43(a)(1)(B) of the Lanham Act, made the false commercial statements alleged above, and tortiously interfered with Khoros's contracts and relationships as alleged above.

64. Khoros has lost money or property as a result of Defendants' conduct, including through lost customers and increased costs incurred to counteract Defendants' statements, and therefore has standing under California Business and Professions Code § 17204.

65. Khoros seeks injunctive relief under the UCL requiring Defendants to remove the false commercial statements and publish a court-approved correction. Khoros seeks no damages or restitution under this Count.

66. Khoros is entitled to preliminary and permanent injunctive relief under the UCL and any other relief authorized by California law that is consistent with the limitations of this Count.

**PRAYER FOR RELIEF**

WHEREFORE, Khoros respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

(a) A preliminary injunction under 15 U.S.C. § 1116(a), Federal Rule of Civil Procedure 65, and applicable California law requiring Defendants, pending final judgment, to remove the false statements and refrain from repeating them, and a permanent injunction under 15 U.S.C. § 1116(a) and applicable California law requiring Defendants to remove the false statements, publish a court-approved correction, deliver the correction in writing to each Khoros customer

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

or prospect to whom Bevy directed the migration or comparison pages or the April 14, 2026 offer, and file and serve a sworn report of compliance under 15 U.S.C. § 1116(a);

(b) Bevy's profits attributable to the false advertising under 15 U.S.C. § 1117(a), enhanced as the Court finds just;

(c) Khoros's actual damages, including damages attributable to the false advertising and damages on the interference count, together with any enhancement authorized by 15 U.S.C. § 1117(a);

(d) Punitive damages on Count II under California Civil Code § 3294;

(e) Damages sufficient to fund corrective advertising, or an order requiring Bevy to undertake corrective advertising;

(f) Costs of the action under 15 U.S.C. § 1117(a);

(g) A finding that this is an exceptional case and an award of reasonable attorneys' fees under 15 U.S.C. § 1117(a);

(h) Pre-judgment and post-judgment interest at the maximum rates allowed by law, including 28 U.S.C. § 1961;

(i) Injunctive relief under California Business and Professions Code § 17200, with no damages or restitution sought under the UCL Count; and

(j) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Khoros demands a trial by jury on all issues so triable.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

Respectfully submitted,

Dated: November 9, 2026

By: */s/ Austin Padgett*

Austin Padgett (SBN 296309)
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3000
austin.padgett@troutman.com

*Attorneys for Plaintiff Khoros, LLC.*